IN THE UNITED STATE COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

**IN RE: NATIONAL HIGHWAY TRAFFIC SAFETY**
**ADMINISTRATION, DEPARTMENT OF**
**TRANSPORTATION, CORPORATE AVERAGE FUEL**
**ECONOMY STANDARDS FOR PASSENGER CARS**
**AND LIGHT TRUCKS FOR MODEL YEARS 2027 AND**
**BEYOND AND FUEL EFFICIENCY STANDARDS FOR**
**HEAVY-DUTY PICKUP TRUCKS AND VANS FOR**
**MODEL YEARS 2030 AND BEYOND, FED. REG. 52540**
**PUBLISHED ON JUNE 24, 2024**                    No. 24-7001

_____

**STATE OF WEST VIRGINIA, et al.**

    **Petitioners**

**v.**                                           No. 24-3560

**NATIONAL HIGHWAY TRAFFIC SAFETY**
**ADMINISTRATION, et al.**

    **Respondents**

_____

**KENTUCKY CORN GROWERS ASSOCIATION, et al.**

    **Petitioners**

**v.**                                           No. 24-3572

**NATIONAL HIGHWAY TRAFFIC SAFETY**
**ADMINISTRATION, et al.**

    **Respondents**

_____

1

**AMERICAN FREE ENTERPRISE CHAMBER
OF COMMERCE, et al.**

     **Petitioners**

**v.**                                          No. 24-3606

**NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION, et al.**

     **Respondents**

_____

### MOTION OF ENVIRONMENTAL DEFENSE FUND, ENVIRONMENTAL LAW AND POLICY CENTER, PUBLIC CITIZEN, AND SIERRA CLUB TO INTERVENE IN SUPPORT OF RESPONDENTS

Pursuant to Federal Rule of Appellate Procedure 15(d), Environmental Defense Fund, Environmental Law and Policy Center, Public Citizen, and Sierra Club (collectively, "Movants") hereby move to intervene in support of Respondents in the above-captioned petitions for review numbered 24-3560, 24-3572, and 24-3606. These consolidated petitions seek review of final action of the National Highway Traffic Safety Administration ("NHTSA") entitled *Corporate Average Fuel Economy Standards for Passenger Cars and Light Trucks for Model Years 2027 and Beyond and Fuel Efficiency Standards for Heavy-Duty Pickup*

*Trucks and Vans for Model Years 2030 and Beyond*, 89 Fed. Reg. 52540 (June 24, 2024) ("Final Rule").[1]

This Court should grant leave to intervene. First, Movants' request is timely because it is submitted within 30 days of the first-filed timely petition for review in this circuit. Fed. R. App. P. 15(d). Second, Movants possess legally protectable interests in the disposition of these petitions for review of the Final Rule, which may as a practical matter impair those interests. *Cf.* Fed. R. Civ. P. 24(a)(2). Third, no existing party adequately represents Movants' interests in this litigation. *Cf. id.*

Petitioners in No. 24-3560 take no position; petitioners in Nos. 24-3572 and 24-3606 did not respond to Movants' request for their position. Respondents do not oppose.

## BACKGROUND

### A. Legal Background

"In the aftermath of the energy crisis created by the 1973 Mideast oil embargo, Congress enacted the Energy Policy and Conservation Act" ("EPCA"). *Ctr. for Biological Diversity v. NHTSA*, 538 F.3d 1172, 1182 (9th Cir. 2008).

---

[1] Movants do not seek to intervene in the petitions for review numbered 24-3601, 24-3603, or 24-3605, or in a petition for review, 24-3539, which was prematurely filed and subsequently refiled. As of the time of this filing, not all petitions for review of the Final Rule have been consolidated in this docket. Movants intend to pursue intervention in any later-consolidated petitions that seek to vacate the Final Rule.

EPCA "established a major program to bring about improved motor vehicle fuel efficiency," including "mandatory vehicle fuel economy standards, intended to be technology forcing . . . [and] strong enough to bring about the necessary fuel conservation which a national energy policy demands." *Ctr. for Auto Safety v. NHTSA*, 793 F.2d 1322, 1324, 1339 (D.C. Cir. 1986) (citations omitted). To that end, the statute directs NHTSA to determine "the maximum feasible average fuel economy level" that "manufacturers can achieve in [each] model year" and to set fuel economy standards at that level. 49 U.S.C. §§ 32902(a), (b)(2)(B).[2]

## B. The Final Rule

In August 2023, NHTSA proposed new vehicle fuel economy standards for passenger cars and light trucks beginning in model year 2027 and new fuel efficiency standards for heavy-duty pickups and vans beginning in model year 2030. Under NHTSA's proposal, automakers would be required to improve fleetwide fuel economy by 2 percent annually for passenger cars and by 4 percent annually for light trucks during model years 2027 through 2031, and improve fleetwide fuel efficiency by 10 percent annually for heavy-duty pickup trucks and vans for model years 2030 through 2035. 88 Fed. Reg. 56128, 56133 tbls.I-1 & I-2 (Aug. 17, 2023). NHTSA projected that as a result of the standards, the overall

_____

[2] The statute assigns this task to the Secretary of Transportation, who has delegated it to NHTSA. 49 C.F.R. § 1.94(c).

fleet of passenger cars and light trucks would achieve an average fuel economy of 57.6 miles per gallon in model year 2032. *Id.* at 56137 tbl.I-4. Heavy-duty pickup trucks and vans would achieve a fleetwide fuel efficiency of 2.153 gallons per hundred miles. *Id.* at 56138 tbl.I-5. And NHTSA estimated the lifetime fuel savings from the rule to be $1,043 per vehicle for passenger cars and light trucks and $439 per vehicle for heavy-duty pickup trucks and vans. *Id.* 56139 tbl.I-6.

On June 24, 2024, NHTSA published its final standards. While the final standards are less stringent than the proposal, they continue to require meaningful improvements in fuel economy for passenger cars and heavy-duty pickup trucks and vans for all of the covered model years and light trucks beginning in model year 2029. The final rule requires 2-percent annual increases in fuel economy for passenger cars for all covered model years, 2-percent annual improvements in fuel economy for light trucks for model years 2029-31, and 8- or 10-percent increases in fuel efficiency for heavy-duty pickup trucks and vans for each of the covered model years. Final Rule, 89 Fed. Reg. at 52546 tbl.I-1 & 52547 tbl.I-2. NHTSA estimates that the new standards will achieve a combined fleetwide fuel economy of 52.5 miles per gallon for passenger cars and light trucks in model year 2031, *id.* at 52549 tbl.I-4, and a fleetwide fuel economy of 2.565 gallons per 100 miles for heavy-duty pickup trucks and vans in model year 2035. *Id.* at 52549 tbl.I-5. Lifetime fuel savings per vehicle are estimated at $639 for passenger cars and light

trucks and $717 for heavy-duty pickup trucks and vans, substantially exceeding the per-vehicle regulatory costs. *Id.* at 52551 tbl.I-6. And the net benefits of the rule are projected to be over $35 billion for light-duty vehicles and over $13 billion for heavy-duty pickup trucks and vans. *Id*. The Final Rule would avoid more than 70,000 tons of nitrogen oxides, almost 7,000 tons of fine particulate matter, and more than 2 million tons of carbon monoxide through 2050 against a regulatory baseline in which the current standards remain in place. In addition to criteria pollutants, the Final Rule also reduces hazardous air pollutants such as 4,300 tons of benzene and 1,000 tons of formaldehyde through 2050. NHTSA, CAFE Model EIS Analysis, Annual Societal Effects Report (June 2024). The Final Rule would also reduce greenhouse gases from vehicles and upstream energy sector processes, eliminating 659 million tons of carbon dioxide, 825 thousand tons of methane, and 24 thousand tons of nitrous oxide by 2050 compared to a no-action alternative. 89 Fed. Reg. at 52573.

## STANDARD FOR INTERVENTION

Federal Rule of Appellate Procedure 15(d) states that a motion to intervene in defense of an agency action "must contain a concise statement of the interest of the moving party and the grounds for intervention." That rule does not specify any standard for intervention, but because "the policies underlying intervention" in district courts "may be applicable in appellate courts," *Int'l Union v. Scofield*, 382

U.S. 205, 216 n.10 (1965), this Court may look to Federal Rule of Civil Procedure

24 for guidance.

Rule 24 provides that leave to intervene be granted to a movant that timely

"claims an interest relating to the . . . transaction that is the subject of the action,

and is so situated that disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest, unless existing parties

adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "[T]his court has

acknowledged that 'interest' is to be construed liberally." *Bradley v. Milliken*, 828

F.2d 1186, 1192 (6th Cir. 1987).

## STATEMENT OF INTEREST

Movants are nonprofit, public-interest organizations that have consistently

advocated for improving the efficiency of automobiles and reducing pollution from

the transportation sector.[3] Movants' organizational purposes include the

advancement of their members' interest in a wider availability of a broader range

---

[3] *See, e.g.,* Joint Comments of Environmental, Advocacy, and Science
Organizations on Notice of Proposed Rulemaking, NHTSA-2023-0022-0004 (filed
on behalf of Center for Biological Diversity, Natural Resources Defense Council,
Sierra Club, and Union of Concerned Scientists); Comments of Environmental
Defense Fund, NHTSA-2023-0022-1509; Decl. of Katherine Garcia ¶¶ 5-15
(hereinafter "Garcia Decl."); Decl. of John Stith ¶¶ 11-13 (hereinafter "Stith
Decl.); Declaration of Howard A. Learner ¶¶ 7, 12-13 (hereinafter "Learner
Decl."); Declaration of Robert Weissman ¶ 2 (hereinafter "Weissman Decl.").

of more efficient vehicles in the marketplace and the protection of their members

from the effects of harmful air pollution, including effects traceable to climate

change.[4] Movants have protectable interests in shielding their members from harms

that would result if NHTSA's Final Rule is vacated.

Movants do not need to demonstrate standing to intervene in defense of a

rule.[5] Nevertheless, Movants have standing to intervene. Standing is regularly

shown "where a party benefits from agency action, the action is then challenged in

court, and an unfavorable decision would remove the party's benefit." *Crossroads

Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). An

organization may defend an agency action on its members' behalf "when its

members would otherwise have standing to sue in their own right, the interests at

stake are germane to the organization's purpose, and neither the claim asserted nor

the relief requested requires the participation of individual members in the

lawsuit." *Ne. Ohio Coal. for Homeless and Serv. Emp. Intern. Union, Loc. 1199 v.*

---

[4] Garcia Decl. ¶¶ 3-4; Stith Decl. ¶¶ 8-10; Learner Decl. ¶¶ 9-10; Weissman Decl. ¶¶ 5-6.

[5] Because Movants seek to intervene in support of the respondents and are thus not affirmatively invoking the Court's jurisdiction, Movants do not need to establish standing. *See Va. House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1951 (2019) (explaining that "it was not … incumbent on [a party] to demonstrate its standing" when it participated "as an intervenor in support of the … Defendants," or "as an appellee" on appeal "[b]ecause neither role entailed invoking a court's jurisdiction"); *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) ("[A] party seeking to intervene need not possess the standing necessary to initiate a lawsuit.").

*Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)); *see also Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004). As described in more detail below, Movants' members would be injured if the Final Rule is vacated and accordingly would have standing to defend the Final Rule in their own right. Movants' members include people desiring to purchase or lease more efficient vehicles;[6] people who live, work, and recreate in or near locations where NHTSA's fuel economy standards most directly affect air pollution levels and negatively affect their health;[7] people with professions that benefit from the proliferation of more efficient vehicles;[8] and people who live, work, and own property in areas that experience the harmful effects of climate change.[9]

If this Court were to vacate the Final Rule, Movants' members would suffer economic, health, recreational, and aesthetic injuries from diminished deployment of more-efficient automobiles; increased air pollution; and worsened effects of climate change. *See* Sections A-C, *infra*. Movants' members would therefore satisfy the injury-in-fact, causation, and redressability requirements of Article III

---

[6] Declaration of Dylan Brock ¶¶ 6-7 (hereinafter "Brock Decl."); Declaration of Kaiba White ¶¶ 7-10 (hereinafter "White Decl.").
[7] Declaration of Maurena Grossman ¶¶ 6-7, 13 (hereinafter "Grossman Decl.").
[8] Declaration of Douglas Snower ¶¶ 4-9 (hereinafter "Snower Decl.").
[9] White Decl. ¶¶ 5-6.

standing. *See, e.g.*, *Sierra Club. v. EPA*, 793 F.3d 656, 664 (6th Cir. 2015) (environmental litigants only need to establish a likelihood that adoption of regulation "would have some marginal effect on area emissions"); *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 112-113 (D.C. Cir. 1990) (holding that consumers who experience a reduced opportunity to purchase certain types of vehicles have standing to challenge fuel-economy rule); *Nat. Res. Def. Council v. NHTSA*, 894 F.3d 95, 104-105 (2d Cir. 2018) (finding that Movant organizations had standing to challenge agency action based on increased automobile air pollution near members' homes); *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 76-78 (D.C. Cir. 2020) (finding that Movant organization had standing to challenge agency action based on increased climate-related emissions and effects of climate change on a member's property).

Movants would also satisfy the remaining requirements of associational standing, were it required. The interests they seek to protect by participating in these cases are germane to their organizational purposes of increasing the availability of more-fuel-efficient vehicles and reducing pollution from the transportation sector. *See Ctr. for Auto Safety*, 793 F.2d at 1323-1324 (finding standing of "non-profit consumer organizations that work to promote energy conservation" to represent members whose "vehicles available for purchase will likely be less fuel efficient" due to challenged fuel economy regulation). And

Movants' defense of the Final Rule does not require participation of their members because petitioners will raise questions of law and fact that will be resolved on the administrative record without consideration of those members' individual circumstances. *Cf. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-288 (1986).

### A. Consumer Injuries

Vacating the Final Rule would harm Movants' members by limiting their options to purchase, sell, and lease more-fuel-efficient vehicles.[10] Under stronger fuel economy regulations like the Final Rule, automakers allocate more resources to producing and selling more-fuel-efficient vehicles, increasing the variety and quantity of more-fuel-efficient options available to customers.[11] Final Rule, 89 Fed. Reg. at 52562 (projecting that "manufacturers will deploy a wide variety of technologies to meet the final CAFE standards"); *id.* at 52562-63 (results of regulatory analysis for the Final Rule "show increased technology penetrations of more efficient conventional [internal combustion engines], increased penetration of advanced transmissions, increased mass reduction technologies, and other types of electrification such as mild and strong hybrids"); *cf. Competitive Enter. Inst.*, 901 F.2d at 116 (noting "overwhelming evidence to support a conclusion that the auto

---

[10] Brock Decl. ¶¶ 6-7; Snower Decl. ¶¶ 4-9.
[11] Snower Decl. ¶¶ 7-8; White Decl. ¶ 10.

manufacturers' product design and product mix decisions are not made substantially independent of the government's imposition of fuel economy standards").

Movants have members who plan to purchase more-fuel-efficient vehicles of model years affected by NHTSA's Final Rule.[12] Vacating the Final Rule will limit these members' choices and opportunities to purchase these vehicles and will cause them to spend more on fuel.[13] *Cf.* 89 Fed. Reg. at 52818 tbl.VI-17 & 52819 tbl.VI-18 (estimating fuel cost savings for passenger cars ranging from $213/vehicle in MY2027 to $548/vehicle in MY2031and $149/vehicle to $690/vehicle for light trucks under the Final Rule). In addition, Movants have members whose businesses depend on the availability of and demand for more fuel-efficient vehicles, which will be increased by the Final Rule.[14] Vacating the Final Rule would reduce the market for more-fuel-efficient vehicles and adversely impact these businesses.[15]

---

[12] Brock Decl. ¶¶ 6-7; White Decl. ¶¶ 7-10.
[13] Brock Decl. ¶ 6-7.
[14] Snower Decl. ¶¶ 6-9.
[15] Snower Decl. ¶ 10.

### B. Air Pollution Injuries

If the Final Rule is vacated, Movants' members will suffer from increased exposure to harmful air pollution caused by pollutants such as oxides of nitrogen, volatile organic compounds, and fine particulate matter.

Nitrogen oxides and volatile organic compounds emissions are precursors to ground-level ozone, which is associated with significant public health effects including asthma exacerbation and respiratory-related hospital admissions and mortality.[16] Fine particulate matter, often called "soot," can penetrate deep into the lungs and is associated with a host of adverse health effects including heart attacks, aggravated asthma, decreased lung function, and premature death in people with heart or lung disease.[17] As NHTSA relates, the Health Effects Institute recently characterized the associations between traffic-related air pollution and adverse health outcomes, finding that associations were "high" or "moderate to high" for

---

[16] NHTSA, Final Environmental Impact Statement: Corporate Average Fuel Economy Standards for Passenger Cars and Light Trucks, Model Years 2027 and Beyond, and Fuel Efficiency Standards for Heavy-Duty Pickup Trucks and Vans, Model Years 2030 and Beyond (June 2024), at 4-6 ("FEIS").

[17] U.S. EPA, Health and Environmental Effects of Particulate Matter (PM), https://www.epa.gov/pm-pollution/health-and-environmental-effects-particulate-matter-pm; FEIS at 4-6 (short-term fine particulate exposures have a "causal" relationship with mortality, premature mortality, and cardiovascular effects like ischemic heart disease and heart failure and a "likely causal" relationship with respiratory effects like exacerbation of asthma and chronic obstructive pulmonary disease).

circulatory mortality, mortality from ischemic heart disease, all-cause mortality, asthma onset for children and adults, childhood acute lower respiratory infection, and mortality from lung cancer.[18]

According to NHTSA, "the U.S. transportation sector remains a major source of emissions of certain criteria pollutants or their chemical precursors" with on-road vehicles accounting for 28 percent of domestic nitrogen oxide emissions (2.112 million tons per year), 6 percent of volatile organic compound emissions (971,713 tons), and 1 percent of fine particulate matter (79,729 tons).[19] These stronger fuel economy standards decrease the amount of petroleum consumed and therefore the emissions associated with refining and combusting this fuel. Movants have members—including members with children[20]—who will be impacted by increased levels of fine particulates, nitrogen oxides, and other dangerous pollutants.

Pollution levels are typically elevated near major roadways, causing harm to those living, working, and attending school nearby.[21] This is especially true for communities of color and low-income communities, who are disparately impacted by near-roadway pollution. 89 Fed. Reg. at 52828. Movants have many members

---

[18] FEIS at 4-5.
[19] FEIS at S-12.
[20] *E.g.*, Grossman Decl. ¶ 9; Brock Decl. ¶ 8.
[21] FEIS at 4-76.

who live, work, attend school, or recreate near major roadways, or transit along them, and near-roadway pollution interferes with these members' activities and harms their health and the health of their families, especially those in the most vulnerable populations.[22]

## C. Climate Injuries

Movants' members will suffer a variety of injuries from climate change-related emissions from vehicles covered by the Final Rule if it is vacated. These emissions harm Movants' members by contributing to the formation of ground-level ozone and other harmful pollution, increasing wildfire frequency and severity, contributing to extreme weather events, and decreasing opportunities to recreate outdoors and appreciate nature.[23]

Climate change contributes to higher levels of ground-level ozone, or smog, because smog is influenced by air temperature and solar radiation level.[24] As discussed above, exposure to ambient ozone can result in asthma exacerbation and respiratory-related hospital admissions and mortality, and is especially harmful to vulnerable populations such as children, the elderly, people who work and recreate

---

[22] Grossman Decl. ¶¶ 6-7; Brock Decl. ¶ 8.

[23] U.S. Global Change Research Program, Fifth National Climate Assessment (2023), chs. 2, 14, available at https://nca2023.globalchange.gov/downloads/NCA5_2023_FullReport.pdf (hereinafter "NCA5"); FEIS ch.5.

[24] NCA5 at 14-6.

outdoors, and people with underlying respiratory conditions.[25] Movants have members who live or spend significant time in ozone nonattainment areas and other high-ozone areas, and some of these members and their families are members of vulnerable populations.[26]

Climate change also increases the frequency of extreme heat and extreme weather events, including drought and wildfires, near where members live.[27] These events harm Movants' members in numerous ways: by increasing risk of injury, death, or property damage; forcing members to expend resources to prevent and address these impacts; and limiting members' ability to undertake activities they enjoy.[28]

Vacating the Final Rule will lead to hundreds of millions of tons of additional greenhouse gas emissions, *see* 89 Fed. Reg. at 52573, thereby exacerbating the adverse ozone and climate-related impacts experienced by Movants' members.

---

[25] U.S. EPA, Health Effects of Ozone Pollution, https://www.epa.gov/ground-level-ozone-pollution/health-effects-ozone-pollution.
[26] Grossman Decl. ¶¶ 6-7, 9.
[27] White Decl. ¶¶ 5-6; NCA5 at 2-16 – 2-21.
[28] White Decl. ¶ 6.

## GROUNDS FOR INTERVENTION

The Court should permit Movants to intervene in the petitions for review in the above-captioned cases. For the reasons stated above, Movants have interests in upholding the Final Rule, and the disposition of these petitions "may as a practical matter impair or impede [Movants'] ability to protect [their] interest[s]." Fed. R. Civ. P. 24(a)(2). Further, Respondents may not "adequately represent" Movants' interests. *Id.* Movants need only show that Respondents' representation "may be inadequate." *Ne. Ohio Coal.*, 467 F.3d at 1007 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "This burden is minimal." *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (explaining that "a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied") (emphasis added). Indeed, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.*

This Court has previously held that governmental entities do not adequately represent interests of more narrowly focused intervenors. *See, e.g.*, *Wineries of the Old Mission Peninsula Ass'n v. Twp. Of Peninsula, Mich.*, 41 F.4th 767, 775 (6th Cir. 2022) (contrasting obligation of township to represent everyone who resides within its boundaries to membership interest groups who are concerned with a narrower set of impacts). Whereas Respondents' "obligation is to represent the

interests of the American people," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)—including the automobile and fossil fuel industries— Movants represent the more specific interests of their members in increasing the availability and variety of more-fuel-efficient vehicles and in avoiding dangerous air pollution. Indeed, one Movant has separately filed an affirmative petition for review of the Final Rule,[29] highlighting the limits to the overlap of Movants' interests with those of Respondents.

This motion is timely. The motion was filed within 30 days of the first timely petition for review in this circuit. Fed. R. App. P. 15(d). The Energy Policy and Conservation Act provides that a petition for review "must be filed not later than 59 days after the regulation is prescribed." 49 U.S.C. § 32909(b). And the window for judicial review opens upon publication of the rule. *Nat. Res. Def. Council*, 894 F.3d at 105-06 ("Because it is only through publication in the Federal Register that an agency's action can take legal effect, we believe Congress intended for publication to be the operative event."). The initial motion to intervene by Kentucky Corn Growers Association, et al. on June 17, 2024—one week *before* publication of the Final Rule in the Federal Register—was premature and was subsequently refiled and docketed on July 2, 2024. Consequently, the first-filed timely petition in which Movants seek to intervene was that of West

---

[29] Sierra Club v. NHTSA, et al., No. 24-3601.

Virginia and other states docketed on June 26, 2024 as Case No. 24-3560. This motion to intervene was filed within 30 days of that petition for review.

Even if the Court were to deem the initial June 17, 2024 petition for review to start the clock for intervention, Movants' intervention request would be timely. *See* Fed. R. App. P. 26(b). This Court has explained that the 30-day deadline in Fed. R. App. P. 15(d) is "not jurisdictional" and has permitted intervention beyond 30 days. *Int'l Union of Operating Eng'rs, Loc. 18 v. Nat'l Lab. Rels. Bd.*, 837 F.3d 593, 596 (6th Cir. 2016). Here, Movants have acted expeditiously to intervene following consolidation of appeals in this Circuit by the Judicial Panel on Multidistrict Litigation, and the timing of their intervention request creates no prejudice to any petitioners. *Cf. Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (enumerating considerations for timeliness of intervention pursuant to Fed. R. Civ. P. 24(a) including the point to which the suit has progressed, the amount of time preceding the application during which the proposed intervenors knew of or should have known of their interest in the case, and the prejudice to the original parties). Multiple challenges were filed to the Final Rule across six different circuits. Movants did not know in which circuit petitions for review of the Final Rule would be consolidated until the Judicial Panel on Multidistrict Litigation issued its Consolidation Order on July 12, 2024. This petition is filed within two weeks of the Consolidation Order, prior to the establishment of a case management

schedule, and prior to the July 31, 2024 deadline for petitioners and respondents to file Appearances of Counsel. *See, e.g.,* Case Manager Letter to Counsel in Case No. 24-3601, *Sierra Club v. NHTSA, et al.* (July 17, 2024).

In the alternative, Movants would readily meet the requirements for permissive intervention if they were applied here because: (1) Movants will not bring new claims but rather intend to offer defensive arguments, all of which necessarily share questions of law and fact with the underlying challenges; and (2) these cases are at a preliminary stage and no briefing schedule has been set, so this timely motion will not unduly delay or prejudice any other party. *Cf.* Fed. R. Civ. Proc. 24(b)(1)(B), (b)(3). Furthermore, Movants have a long history of advocating for strong state and federal standards to control pollution from vehicles and respectfully submit that the Court will benefit from their participation here.

## CONCLUSION

This Court should grant Movants leave to intervene in support of Respondents in the consolidated cases 24-3560, 24-3572 and 24-3606.

Dated: July 26, 2024

Respectfully submitted,

/s/ Joshua Berman
Joshua Berman
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
(202) 650-6062
josh.berman@sierraclub.org

Vera Pardee
Law Office of Vera Pardee
726 Euclid Avenue
Berkeley, CA 94708
(858) 717-1448
pardeelaw@gmail.com

*Counsel for Sierra Club*

/s/ Howard A. Learner
Howard A. Learner
Environmental Law & Policy Center
35 E. Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
HLearner@elpc.org

*Counsel for Environmental Law & Policy Center*

/s/ Alice Henderson
Alice Henderson
Environmental Defense Fund
2600 Broadway, Suite 300
Boulder, CO 80302
(303) 447-7205
ahenderson@edf.org

*Counsel for Environmental Defense Fund*

/s/ Allison M. Zieve
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
azieve@citizen.org

*Counsel for Public Citizen*

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to 6th Circuit Rule 26.1, Movants Environmental Defense Fund, Environmental Law and Policy Center, Public Citizen, and Sierra Club state that they are non-profit environmental and public health organizations without any stock or parent corporations.

Dated: July 26, 2024

/s/ Joshua Berman
Joshua Berman

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), counsel hereby certifies that the foregoing Motion to Intervene contains 4,096 words, as counted by counsel's word processing system, and thus complies with the 5,200 word limit. This document further complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Times New Roman font.

Dated: July 26, 2024

/s/ Joshua Berman
Joshua Berman

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I served the foregoing Motion to Intervene and attachments on all parties through the Court's electronic case filing (ECF) system.

/s/ Joshua Berman
Joshua Berman