IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————————

*IN RE: NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION
DEPARTMENT OF TRANSPORTATION,
CORPORATE AVERAGE FUEL ECONOMY STANDARD FOR
PASSENGER CARS AND LIGHT TRUCKS FOR MODEL YEARS
2027 AND BEYOND AND FUEL EFFICIENCY STANDARDS FOR
HEAVY DUTY PICKUP TRUCKS AND VANS FOR MODEL
YEARS 2023 AND BEYOND,
89 FED. REG. 52540, PUBLISHED ON JUNE 24, 2024*

———————————————

On Petitions for Review of a Final Rule of the
National Highway Traffic Safety Administration

**AMICUS CURIAE BRIEF OF THE STATES OF CALIFORNIA,
COLORADO, HAWAII, ILLINOIS, MARYLAND, MAINE, MINNESOTA,
NEW JERSEY, NEW YORK, OREGON, RHODE ISLAND, VERMONT,
AND WASHINGTON, THE COMMONWEALTH OF MASSACHUSETTS,
AND THE DISTRICT OF COLUMBIA
IN SUPPORT OF RESPONDENTS**

ROB BONTA
*Attorney General of California*
TRACY L. WINSOR
*Senior Assistant Attorney General*
DENNIS L. BECK, JR.
*Acting Senior Assistant Attorney General*
MYUNG J. PARK
*Supervising Deputy Attorney General*
KAVITA M. LESSER
*Acting Supervising Deputy Attorney
General*

DAVID ZAFT
ELIZABETH JONES
THEODORE A.B. MCCOMBS
*Deputy Attorneys General*
  600 W. Broadway, Suite 1800
  San Diego, CA 92186-5266
  Telephone: (619) 738-9003
  Theodore.McCombs@doj.ca.gov

*Attorneys for Amici Curiae State of California*

*Additional counsel listed in signature block*

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICI CURIAE ............................................ 1

ARGUMENT .................................................................................................... 3

I.    Petitioners' Collateral Attack on State ZEV Standards
Is Not Properly Before the Court ........................................................ 5

    A.    This Court Lacks Subject Matter Jurisdiction to
Declare State Regulations Preempted ..................................... 5

    B.    Petitioners' Preemption Argument Must Be Raised,
If at All, in Trial Court Litigation against
Appropriate State Officers ...................................................... 7

II.    NHTSA Is Not Empowered to Determine the Validity
of State ZEV Standards ..................................................................... 17

III.    NHTSA's Modeling of Electric Vehicle Production in
the Baseline Was Not Arbitrary and Capricious .............................. 20

    1.    NHTSA Reasonably Assumed that
Automakers Would Continue to Comply
with ACC I and ACT ................................................. 21

    2.    NHTSA Reasonably Included Modeled
Compliance with ACC II ............................................ 22

    3.    Petitioners' Contrary Arguments Are
Without Merit ............................................................. 24

IV.    NHTSA Determined It Would Have Finalized the Same
Federal Standards Even Without Modeling State ZEV
Standards in the Baseline ................................................................. 25

CONCLUSION ............................................................................................... 27

# TABLE OF AUTHORITIES

**Page**

CASES

*American Public Gas Association v. Department of Energy*,
   22 F.4th 1018 (D.C. Cir. 2022)....................................................................23

*Associated Builders & Contractors v. Michigan Department of Labor*
   *& Economic Growth*,
   543 F.3d 275 (6th Cir. 2008) ...............................................................11, 12

*California Division of Labor Standards Enforcement v. Dillingham*
   *Construction, N. A., Inc.*,
   519 U.S. 316 (1997)........................................................................................13

*Central Valley Chrysler-Jeep, Inc. v. Goldstene*,
   529 F. Supp. 2d 1151 (E.D. Cal. 2007) ....................................................8, 9, 15

*Delta Construction Co. v. Environmental Protection Agency*,
   783 F.3d 1291 (D.C. Cir. 2015).......................................................................6, 9

*Department of Homeland Security v. Regents of the University of*
   *California*,
   591 U.S. 1 (2020)............................................................................................6

*General Motors Corp. v. National Highway Traffic Safety*
   *Administration*,
   898 F.2d 165 (D.C. Cir. 1990)......................................................................8, 26

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
   508 F. Supp. 2d 295 (D. Vt. 2007) .............................................................8, 9, 15

*Merck Sharp & Dohme Corp. v. Albrecht*,
   587 U.S. 299 (2019)........................................................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982)........................................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Minnesota Automobile Dealers Association v. Minnesota Pollution
Control Agency*,
986 N.W.2d 225 (Minn. Ct. App. 2023)...............................................7

*Motor & Equipment Manufacturers Association, v. Environmental
Protection Agency*,
627 F.2d 1095 (D.C. Cir. 1979)............................................................3

*New York State Conference of Blue Cross & Blue Shield Plans v.
Travelers Insurance Co.*,
514 U.S. 645 (1995).....................................................................11, 14

*National Association of Manufacturers v. Department of Defense*,
583 U.S. 109 (2018)..............................................................................6

*National Mining Association v. Secretay of Labor*,
763 F.3d 627 (6th Cir. 2014) ...............................................................7

*Ohio v. Becerra*,
87 F.4th 759 (6th Cir. 2023) ................................................................6

*Rabbers v. Commissioner of the Social Security Administration*,
582 F.3d 647 (6th Cir. 2009) .............................................................25

*West Virginia v. Environmental Protection Agency*,
597 U.S. (2022)............................................................................ 18-19

*WorldCom, Inc. v. Federal Communications Commission*,
238 F.3d 449 (D.C. Cir. 2001).........................................................23

*Wyeth v. Levine*,
555 U.S. 555 (2009).........................................................................19

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

United States Code, Title 15
   § 2002 (1976)....................................................................................16

United States Code, Title 28
   § 1291...............................................................................................6

United States Code, Title 42
   § 7507...............................................................................................3
   § 7545(o)....................................................................................6, 13
   § 7586(f)(4)......................................................................................14

United States Code, Title 49
   § 32901(10), (11).............................................................................10
   § 32902.............................................................................................5
   § 32902(f)...................................................................................15, 26
   § 32902(h)(1)...........................................................................1, 3, 10
   § 32909(a)......................................................................................5, 6
   § 32919...................................................................................6, 10, 19

**COURT RULES**

Federal Rules of Appellate Procedure Rule 29(a)(2)......................................1

**FEDERAL REGULATORY MATERIAL**

43 Fed. Reg. 11,995 (Mar. 23, 1978)......................................................15

76 Fed. Reg. 57,106 (Sept. 15, 2011) .......................................................9

86 Fed. Reg. 74,236 (Dec. 29, 2021) .......................................................19

89 Fed. Reg. 52,540 (Jun. 24, 2024).............................. 1, 2, 5, 6, 12, 18-22, 24, 26


**LEGISLATIVE MATERIAL**

Pub. L. No. 110-140, 121 Stat. 1492 (2007)...........................................14

Pub. L. No. 117-169, 136 Stat. 1818 (2022)...........................................14


**OTHER AUTHORITIES**

Greg Dotson, *State Authority to Regulate Mobile Source Greenhouse
   Gas Emissions, Part 2: A Legislative and Statutory History
   Assessment*, 32 Geo. Env't L. Rev. 625 (2020)...................................14

California Air Resources Board, ACT Credit Summary Through the
   2023 Model Year, https://ww2.arb.ca.gov/resources/fact-
   sheets/ACT-Credits-Summary%202023 ..........................................22

California Air Resources Board, States that Have Adopted
   California's Vehicle Regulations, https://ww2.arb.ca.gov/our-
   work/programs/advanced-clean-cars-program/states-have-adopted-
   californias-vehicle-regulations .............................................8

California Energy Commission, New ZEV Sales in California,
   https://www.energy.ca.gov/data-reports/energy-almanac/zero-
   emission-vehicle-and-infrastructure-statistics-collection/new-zev ...................18

# IDENTITY AND INTEREST OF AMICI CURIAE[1]

Petitioners challenge federal fuel-economy standards promulgated by the National Highway Traffic Safety Administration (NHTSA), 89 Fed. Reg. 52,540 (Jun. 24, 2024) (Rule), under the Energy Policy and Conservation Act, 49 U.S.C. §§ 32901–32919 (EPCA, as amended). Petitioners chiefly argue that 49 U.S.C. § 32902(h)(1) prohibits the inclusion of any electric vehicles in the "no action" (or "business-as-usual") scenario that NHTSA uses as the baseline in its rulemakings. NHTSA correctly explains (Br. 26-39) that Petitioners' interpretation is contrary to EPCA's text.

But Petitioners also attempt an improper collateral attack on the legality of certain *state* standards, asserting that those state standards are preempted by EPCA and the Clean Air Act's Renewable Fuel Standard, and that NHTSA was obligated to say so. Pet. Br. 3, 52. This brief focuses on the flaws in Petitioners' collateral attack. As NHTSA argues (Br. 44-45), Petitioners' attack on state laws has no place in either this case or NHTSA's rulemaking, and State amici write separately to provide further support for NHTSA's arguments.

---

[1] The States of California, Colorado, Hawaii, Illinois, Maryland, Maine, Minnesota, New Jersey, New York, Oregon, Rhode Island, Vermont, and Washington, the Commonwealth of Massachusetts, and the District of Columbia submit this brief pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

The state-law emissions standards that Petitioners target generally require increasing sales of zero-emission vehicles (ZEVs), such as electric vehicles,[2] in the seventeen States that have adopted such ZEV standards. NHTSA recognized that the impressive growth in electric vehicle sales over the last decade is expected to continue even in the absence of new federal vehicle standards, and NHTSA used state ZEV standards as a proxy to model that anticipated growth in its "no action" baseline. 89 Fed. Reg. at 52,610. That is, NHTSA assumed that automakers would continue to comply with state ZEV standards in the States that had adopted them and that, for a given model year, the number of ZEVs representing compliance with those standards in those States would reasonably stand in for the *total* number of electric vehicles that automakers would sell nationwide. *Id.* at 52,611. As NHTSA explains (Br. 42, 46-47), that assumption is a conservative, straightforward way to model a national market phenomenon attributable to many factors beyond federal and state vehicle standards.

Amici States have an interest in preemption claims against state laws being litigated and decided in proper fora and not in petitions for review of federal rules.

---

[2] This brief, like NHTSA's Rule, uses "electric vehicle" to refer to battery-electric vehicles (vehicles that run solely on electricity from an external charge), and "ZEV" to refer to all zero-emission vehicles under California's ZEV regulations, which include electric vehicles, plug-in hybrid vehicles, and fuel-cell electric vehicles. *See infra* 18 n.14; 89 Fed. Reg. at 52,550; JA__ [TSD at 3-66 to 3-67].

Many have adopted or are considering adopting state ZEV standards under their traditional police powers over their in-state markets, which Congress expressly preserved in the Clean Air Act.[3] Amici States submit this brief to defend against Petitioners' improper collateral attack on their authority.

## ARGUMENT

Petitioners' primary argument is that, even though automakers will certainly produce substantial numbers of electric vehicles with or without new federal fuel-economy standards, Section 32902(h)(1) prohibits NHTSA from starting its standard-setting analysis from a "no action" regulatory baseline that includes a single electric vehicle. But Petitioners also advance a backup argument—that, even if NHTSA can include electric vehicles in its baseline, NHTSA's methodology for projecting the number of electric vehicles in that baseline fleet was unlawful. That second argument, in which Petitioners collaterally attack state ZEV standards as preempted, is material only if Petitioners' primary argument fails. Because it does

---

[3] California is the only State eligible to receive a preemption waiver for its own new motor vehicle emissions program under Clean Air Act Section 209(b), 42 U.S.C. § 7543(b)(1). *See Motor & Equipment Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1108-1111 (D.C. Cir. 1979) (Congress recognized a national benefit from allowing California to continue improving on its "already excellent program of emissions control" (internal quotation omitted)). But other States may choose to adopt California's standards under Clean Air Act Section 177, 42 U.S.C. § 7507. States that have done so are referred to as "Section 177 States."

fail (NHTSA Br. 26-39), State amici write to explain why Petitioners' backup argument likewise provides no basis to vacate the Rule.

Petitioners' backup argument—that NHTSA erred by using state ZEV standards to model electric vehicles in its baseline fleet, Pet. Br. 47—rests on two premises: (1) that state ZEV standards are expressly preempted by EPCA and impliedly preempted by the Clean Air Act's Renewable Fuel Standard; and (2) that NHTSA, in its rulemaking, was required to reach those conclusions and proceed as if all such standards had been invalidated. Pet. Br. 46-52.

This Court lacks jurisdiction to reach Petitioners' first premise. The present petition for review of *federal* fuel-economy standards, based on an administrative record for those federal standards, is not a proper vehicle for determining whether *state* emission standards are preempted. Such challenges must be brought in trial courts in the relevant States, where state officials would be defendants and could take discovery, build the necessary factual record, and otherwise defend their laws.

As for Petitioners' second premise, it was perfectly lawful for NHTSA to decline to make preemption determinations that are outside its authority. That is all the more true because such determinations were irrelevant to NHTSA's rulemaking. NHTSA's baseline does not turn on state ZEV standards' validity in the abstract but, rather, on whether automakers are expected to produce electric vehicles consistent with those standards. NHTSA's record plainly supports that

expectation. NHTSA's assumptions about compliance with state ZEV standards are reasonable, and even conservative, as they use ZEV targets in only seventeen States to stand in for total electric vehicle sales in all fifty States. Petitioners' preemption arguments also fail to clear the Administrative Procedure Act's harmless-error bar. For those reasons, NHTSA is correct that the Court should not reach Petitioners' preemption argument.

## I. PETITIONERS' COLLATERAL ATTACK ON STATE ZEV STANDARDS IS NOT PROPERLY BEFORE THE COURT

### A. This Court Lacks Subject Matter Jurisdiction to Declare State Regulations Preempted

All parties agree this Court has jurisdiction to review NHTSA's rule pursuant to EPCA's judicial review provision, 49 U.S.C. § 32909(a). Pet. Br. 2; NHTSA Br. 5. That provision provides original jurisdiction in the circuit courts for review of a "regulation prescribed in carrying out any of sections 32901-32904." 49 U.S.C. § 32909(a)(1). NHTSA promulgated this rule pursuant to 49 U.S.C. § 32902. *See* 89 Fed. Reg. at 52,545 n.5. This Court thus has original jurisdiction to review that action, including the interpretation of Section 32902(h) upon which NHTSA relied therein.

However, Section 32909(a) does not authorize circuit courts to independently review *state regulations*—like the state ZEV standards—to determine whether they are preempted. Such issues come to the circuit courts, if at all, through their

appellate jurisdiction over district courts that have personal jurisdiction over the parties and subject matter jurisdiction over the dispute. *See* 28 U.S.C. § 1291. Indeed, EPCA's judicial review provision does not extend direct circuit court review even to all NHTSA actions taken under EPCA. *Delta Construction Co. v. EPA*, 783 F.3d 1291, 1298 (D.C. Cir. 2015) (rejecting direct circuit review of NHTSA's denial of petition for rulemaking). And neither EPCA's preemption provision, 49 U.S.C. § 32919, nor the Clean Air Act's Renewable Fuel Standard, 42 U.S.C. § 7545(o), is among the sections enumerated in EPCA's direct review provision. 49 U.S.C. § 32909(a); *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 126-27 (2018) (limiting direct review to agency actions taken pursuant to the specific sections enumerated in direct-review provision).

Moreover, "it is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (citation and quotation marks omitted); *see also Ohio v. Becerra*, 87 F.4th 759, 774 n.7 (6th Cir. 2023) (same). Here, NHTSA did not take any position whatsoever on the legality of state ZEV standards, let alone invoke that position as a ground for its action. Instead, NHTSA used those state standards as a benchmark to forecast the number of electric vehicles automakers are reasonably likely to produce in a "no action" scenario. 89 Fed. Reg. at 52,705-06. As

discussed *infra* in Part III, that benchmark is reasonable regardless of Petitioners'

preemption theory or state ZEV standards' legal status, given the nationwide

growth in electric vehicle sales. And notably, Petitioners do not claim otherwise:

they make no serious contention that the electric vehicle sales NHTSA modeled in

the baseline are unrealistically high or low. Petitioners' preemption arguments are

outside the scope of NHTSA's rulemaking and thus also outside the scope of this

Court's review of that rulemaking.

### B. Petitioners' Preemption Argument Must Be Raised, If at All, in Trial Court Litigation against Appropriate State Officers

If Petitioners wish to pursue their preemption arguments, they must do so in a

district court with proper jurisdiction.[4] No provision in EPCA or any other federal

statute provides for direct appellate review of state emission standards. *Cf. Nat'l*

*Mining Ass'n v. Sec'y of Labor*, 763 F.3d 627, 632 (6th Cir. 2014) (initial appellate

review of *federal* agency decisions occurs "only when a direct-review statute

specifically gives the court of appeals subject-matter jurisdiction" (quoting *Nat'l*

---

[4] For simplicity, this brief discusses original actions in federal district court, but plaintiffs can and do assert preemption of state ZEV standards in state trial courts; some States also provide for appellate review of state agency proceedings, in which plaintiffs have raised such arguments. *E.g.*, *Minn. Auto. Dealers Ass'n v. Minn. Pollution Control Agency*, 986 N.W.2d 225, 230, 237 (Minn. Ct. App. 2023) (rejecting, on direct review of agency rulemaking, federal preemption challenge to Minnesota's adoption of state ZEV standards). This underscores that Petitioners need not strain EPCA's direct review provision to find an appropriate forum for their preemption theory.

*Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012)). Thus, as Petitioners obliquely reference, *all* previous cases that have decided the merits of EPCA preemption challenges to state emission standards were brought as original actions in district courts. Pet. Br. 50 (discussing *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007), and *Central Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151 (E.D. Cal. 2007)). Petitioners' gambit of attaching their preemption challenge to this federal rule review circumvents important judicial safeguards and, if permitted, would deprive appellate courts of the advantages of a thorough adversarial process in the trial court.

**1.** To bring such a challenge in district court, Petitioners would need to meet threshold requirements such as standing, the *Ex parte Young* exception to Eleventh Amendment immunity, and personal jurisdiction over a California or Section 177 State officer.[5] If any Petitioners here were to pursue such an action, those showings could vary in difficulty depending on the petitioner: the State of Ohio or an auto dealership in Kentucky, for example, may have trouble proving that it is injured by a California regulation applicable to vehicle sales in California. *See, e.g.*, Pet. Br.

---

[5] Notably, no State in the Sixth Circuit is a Section 177 State. *See* CARB, States that Have Adopted California's Vehicle Regulations, https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations.

vi, xii. Those threshold requirements safeguard States against casual interference with their duly enacted laws and ensure courts do not spend their resources on advisory opinions litigated by strangers to the controversy. Here, Petitioners' standing to sue NHTSA, based on injuries derived entirely from NHTSA's fuel-economy standards, Pet. Br. 23-26, does not justify skipping over those important requirements in asserting state ZEV standards are preempted.

**2.** To prevail in any district court action, Petitioners would need to develop a factual record particular to state ZEV standards and the factual premises of their preemption arguments, for which the federal administrative record presently before the Court cannot fairly substitute. For example, Petitioners assert—without a single citation to the present record—that greenhouse gas emission standards and fuel-economy standards are "two sides of the same coin." Pet. Br. 48.[6] But in *Green Mountain*, the district court held a sixteen-day trial, 508 F. Supp. 2d at 302, and in *Central Valley Chrysler-Jeep*, the district court reviewed a thorough summary judgment record, 529 F. Supp. 2d at 1157-59, both concluding that emissions and

---

[6] Petitioners' reliance on background-section dicta from *Delta Construction*, 783 F.3d at 1294, is misplaced. That dictum drew on a statement made in a specific rulemaking context in 2011. *See id.* (quoting 76 Fed. Reg. 57,106, 57,124-25 (Sept. 15, 2011)). To the extent that outdated, out-of-context statement had any bearing on a preemption question, that would be all the more reason to reserve the question for adjudication on a current factual record developed to answer it—as the district courts in *Green Mountain* and *Central-Valley Chrysler-Jeep* did.

fuel-economy standards were not, in fact, interchangeable, 508 F. Supp. 2d at 398-99; *see also* 529 F. Supp. 2d at 1189 (same).

In a district court action, Petitioners would have the burden to prove that state ZEV standards fall under the terms of EPCA's express preemption provision—i.e., that they are "related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under [EPCA]." 49 U.S.C. § 32919(a). Here, though, Petitioners assert a purported relationship between state ZEV standards and "fuel economy," not fuel-economy *standards*. Pet. Br. 48 ("State electric-vehicle mandates have a clear 'connection with' fuel economy."); *id.* ("more than a mere 'connection with' fuel economy"); *id.* at 49 ("The state electric-vehicle mandates … 'relat[e] to' fuel economy…."). They also focus entirely on electric vehicles, which—as Petitioners themselves emphasize—by statutory definition do not consume "fuel" and have no "fuel economy" at all. 49 U.S.C. § 32901(10), (11); Pet. Br. 65. Conspicuously, Petitioners and NHTSA *agree* that, whatever the proper interpretation of Section 32902(h)(1), EPCA does not permit a federal fuel-economy standard to mandate electric vehicle production. Pet. Br. 1, 28; NHTSA Br. 26, 28-29, 36. Yet that is exactly how Petitioners characterize state ZEV standards: as "an electric-vehicle mandate." Pet. Br. 14. Petitioners thus have the unenviable burden of proving "an electric-vehicle mandate" is related to standards that can never be an electric-vehicle mandate.

Petitioners' only attempt to square this circle here is to make a fact-bound argument about how automakers comply with fuel-economy standards. Pet. Br. 50. Petitioners draw from case law on ERISA preemption, *id.*, which suggests that state laws that indirectly "force an ERISA plan to adopt a certain scheme of … coverage" or "effectively restrict its choice of insurers" may be preempted. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995). But the scope of ERISA preemption is guided by "the objectives of the ERISA statute," *Associated Builders & Contractors v. Mich. Dep't of Labor & Econ. Growth*, 543 F.3d 275, 281 (6th Cir. 2008), which are distinct from the fuel-economy statute's objectives. While Congress in ERISA sought to prevent the "tailoring of plans … to the peculiarities of [state] law," *Travelers*, 514 U.S. at 667 (citation omitted), automakers already tailor their offerings for different markets and different States. Petitioners offer no reason to treat an automaker's fleet mix of new vehicles like an employee benefit plan's choice of insurance coverage.

But even assuming arguendo that Petitioners have articulated a cognizable theory, it is exactly the kind of theory that requires discovery and testing under the evidence rules. As *Travelers* makes clear, not all state laws that exert an "indirect economic influence" on ERISA plans—making certain plan actions more or less financially attractive—are preempted, only those that so acutely affect a plan's choices as to bind or restrict them. 514 U.S. at 659-60, 668. Accepting Petitioners'

analogy, then, not all state laws that indirectly influence an automaker's vehicle mix, from electric vehicle registration fees to oil production subsidies,[7] are "related to fuel economy standards." 49 U.S.C. § 32919(a). The *degree* to which state ZEV standards influence automakers' decisions about their compliance with NHTSA's standards would thus be a "necessary, but not a sufficient" factual predicate to their preemption argument. *Associated Builders*, 543 F.3d at 281.

Yet Petitioners point to nothing in the present record showing to what degree state ZEV standards actually restrict—if at all—"manufacturers' choices as to how to meet [NHTSA's] standards," Pet. Br. 50. The record *does* make clear that some automaker compliance strategies involve no overlap whatsoever between NHTSA fuel-economy standards and state ZEV standards. For example, an automaker's use of state-law ZEV credits to comply with state ZEV standards has no impact on its compliance with federal standards;[8] similarly, an automaker's electric vehicle sales in *non*-Section 177 states boosts compliance with federal fuel-economy standards

---

[7] *See, e.g.*, Ohio Rev. Code § 4503.10(C)(3) (vehicle registration surcharges for electric vehicles and plug-in hybrids); Texas Tax Code §§ 202.051-063 (tax incentives for oil production).

[8] *See* Pet. Br. 50; NHTSA Br. 42; 89 Fed. Reg. at 52,611 (describing state ZEV credits). Those state ZEV credits are wholly independent from EPCA's fuel-economy credits program.

but has no impact on its compliance with state ZEV standards.[9] Plainly, then, automakers make choices about how to comply with state ZEV standards that have no connection with federal fuel-economy standards, and vice versa. In an original action, the state defendants would be entitled to discovery on Petitioners' theory, including third-party discovery from auto manufacturers about the diverse choices they make about compliance with these distinct federal and state programs.[10]

**3.** Petitioners would have to grapple with how Congress has actually treated state emission standards, including ZEV standards, and including in EPCA itself. Petitioners fail to address Congress's explicit, longstanding support for state ZEV standards, which "counsels against pre-emption here." *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N. A., Inc.*, 519 U.S. 316, 331 n.7 (1997). That history of support, comprising fifty years of federal legislation recognizing

---

[9] *See* JA___[State Comments, App. A 40] (367,000 new electric vehicles were registered in 2022 in Texas and Florida, which have not adopted state ZEV standards).

[10] Similar discovery would be necessary to establish conflict preemption based on the Renewable Fuel Standard. Petitioners have yet to show that the Renewable Fuel Standard and state ZEV standards even work at cross-purposes, much less that they "irreconcilably conflict[t]." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 315 (2019) ("The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute."). The requirements for renewable fuel production—which Petitioners do not even cite—are "expressed in terms of a volume percentage of transportation fuel sold or introduced into commerce." 42 U.S.C. § 7545(o)(3)(B)(ii)(II). There is no conflict if increased sales of electric vehicles result in lower total liquid fuel sales because the federal volume mandates would adjust automatically, by congressional design.

and embracing California's vehicle emissions program, is far better suited to briefing in an original action (with the availability of appellate review) than as an improper sideshow to judicial review of the Rule.

For example, in the 1990 Clean Air Act amendments, Congress instructed EPA to incorporate elements of California's nascent ZEV standards into federal emission regulations. 42 U.S.C. § 7586(f)(4). In the 2022 Inflation Reduction Act, Congress authorized EPA to support other States' adoption and implementation of California's ZEV standards. Pub. L. No. 117-169, § 60105(g), 136 Stat. 2068-69. That continuing congressional support for state ZEV standards cannot plausibly be squared with the notion that those standards are preempted: Petitioners' theory would "le[ave] States without the authority to do just what Congress" intended. *Associated Builders*, 543 F.3d at 283 (quoting *Travelers*, 514 U.S. at 667).[11]

---

[11] Notably too, in 2007, Congress considered and rejected repeated attempts to subordinate Clean Air Act greenhouse gas standards to fuel-economy standards. *See* Greg Dotson, *State Authority to Regulate Mobile Source Greenhouse Gas Emissions, Part 2: A Legislative and Statutory History Assessment*, 32 Geo. Env't L. Rev. 625, 652-58 (2020) (collecting legislative proposals). Instead, when Congress comprehensively reexamined and reinvigorated EPCA's fuel-economy program later that same year, Pub. L. No. 110-140, §§ 101-113, 121 Stat. 1498-1508, and after the *Green Mountain* and *Central Valley Chrysler-Jeep* courts held that EPCA did *not* preempt California's vehicle greenhouse gas standards, Congress left the preemption provision untouched, thereby ratifying those judicial interpretations of its scope. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n.66 (1982).

In EPCA itself, Congress addressed the interaction between emissions standards and fuel-economy standards, and it determined the fuel-economy program should yield to Clean Air Act standards. By requiring NHTSA, in deciding the "maximum feasible" average fuel economy automakers can achieve, to consider "the effect of other motor vehicle standards of the Government on fuel economy," Congress instructed NHTSA that, in a choice between Clean Air Act compliance and higher fuel economy, Clean Air Act compliance takes priority. 49 U.S.C. § 32902(f); *see, e.g.*, 43 Fed. Reg. 11,995, 12,009-10 (Mar. 23, 1978) (analyzing whether compliance with EPA or California emission standards would carry "fuel economy penalties" that justified lower "maximum feasible" standards). And as Petitioners acknowledge (Pet. Br. 50-51), the two district courts that have examined EPCA's history concluded that priority extended to *all* emission standards authorized by the Clean Air Act—including California standards covered by a Section 209(b) waiver. *Central Valley Chrysler-Jeep*, 529 F. Supp. 2d at 1172-74; *Green Mountain*, 508 F. Supp. 2d. at 345-46.[12]

---

[12] Indeed, *Ophir v. City of Boston*, one of the hybrid taxicab cases Petitioners cite (Br. 49), relied on EPCA's explicit deference to emission standards, including California's standards, to distinguish Boston's hybrid taxicab ordinance from California's greenhouse gas emission standards. 647 F. Supp. 2d 86, 92 n.15 (D. Mass. 2009). Moreover, the hybrid vehicles at issue in the taxicab cases—which use electric components to assist a gasoline engine—*do* run on "fuel" and have "fuel economy," and are simply considered gasoline-fueled vehicles under EPCA, unlike electric vehicles. *See* JA__ [TSD at 3-66 to 3-68]; *see supra* 10.

While Petitioners assert those decisions were wrong, their one-paragraph rebuttal is not remotely adequate to prove it. Petitioners never seriously engage with the detailed statutory analysis the district courts performed, which traced "other motor vehicle standards of the Government" back through a non-substantive amendment to the original term "other Federal motor vehicle standards." 15 U.S.C. § 2002(e) (1976). The preceding subsection, Section 2002(d), defined "Federal standards" to include "emissions standards applicable by reason of section 209(b) of [the Clean Air] Act," i.e., California standards covered by a Clean Air Act preemption waiver. 15 U.S.C. § 2002(d)(3)(D) (1976). Both references in Sections 2002(d) and 2002(e) served the same function: directing NHTSA to accommodate automakers' obligations to comply with existing environmental and safety standards when deciding how much automakers could improve their fleets' fuel economy.[13]

To prevail, Petitioners would have to establish that Congress meant the term "Federal motor vehicle standards" in Section 2002(e) to be less inclusive than "Federal standards" in Section 2002(d). Petitioners have not attempted to make

---

[13] In the early years of the fuel-economy program, Congress set passenger-car standards itself, 15 U.S.C. § 2002(a)(1) (1976), but Section 2002(d) directed NHTSA to grant variances to automakers if other "Federal standards" impeded their compliance. For later years, Congress directed NHTSA to set passenger-car fuel-economy standards and to account for the effects of "Federal motor vehicle standards" on fuel economy when doing so. *Id*. § 2002(a)(3), (a)(4), (e).

that showing here; nor does the Court have before it anything like the detailed briefing and record the California and Vermont district courts had to evaluate these arguments.

*     *     *

None of the above appears in Petitioners' six pages of briefing: nothing that shows any satisfaction of threshold requirements to challenge duly enacted state laws; no evidence to support their bald factual assertions; and none of Congress's fifty-plus years of legislation on state emission standards. Nor does any of this appear in the administrative record. For good reason, too: as the next section discusses, NHTSA never proposed to decide the validity of state ZEV standards. This dearth of record evidence or even discussion underscores how inappropriate a vehicle this review of federal fuel-economy standards is for deciding Petitioners' preemption arguments against state emission standards.

## II.  NHTSA IS NOT EMPOWERED TO DETERMINE THE VALIDITY OF STATE ZEV STANDARDS

Instead of challenging state ZEV standards in an original action, Petitioners attempt to bootstrap their attack on state ZEV standards into this review of federal regulation, arguing that "NHTSA's failure to confront the illegality of the state electric-vehicle mandates was arbitrary and capricious." Pet. Br. 53. That argument only highlights the fact that preemption is outside the scope of the Court's review

because the validity of state ZEV standards was *not* a ground invoked by NHTSA in its rulemaking. *See supra* 6-7. That argument also fails on its merits.

NHTSA's baseline methodology assumed, consistent with real-world data, that automakers would continue to comply with state ZEV standards and that those standards' annual ZEV targets would reasonably stand in for the total domestic growth in electric vehicle sales absent any change in federal standards.[14] 89 Fed. Reg. at 52,610-11, 52,698 (detailing the model's simulated compliance with California ZEV standards). Petitioners fail to identify any basis for the proposition that NHTSA may, let alone must, take on the role of a district court and determine whether certain state laws are preempted before it assumes that the regulated industry will comply with them, or that such compliance is a reasonable proxy for overall market behavior.

That failure is unsurprising because NHTSA lacks authority to decide whether EPCA or the Clean Air Act preempt state laws. "Agencies have only those

---

[14] While NHTSA modeled sales of electric vehicles, automakers can and do sell other ZEVs to comply with state ZEV standards. In California, as of 2024's third quarter, automakers have cumulatively sold over 1.5 million electric vehicles, over 525,000 plug-in hybrid vehicles, and nearly 18,000 fuel-cell electric vehicles (which run on electricity generated by a hydrogen fuel cell). California Energy Comm'n, New ZEV Sales in California, https://www.energy.ca.gov/data-reports/energy-almanac/zero-emission-vehicle-and-infrastructure-statistics-collection/new-zev. All of these vehicle types count toward compliance with California's ZEV regulations.

powers given to them by Congress," *West Virginia v. EPA*, 597 U.S. 697, 723

(2022), and "no special authority to pronounce on pre-emption absent delegation

by Congress," *Wyeth v. Levine*, 555 U.S. 555, 577 (2009). In NHTSA's case,

EPCA's preemption provision is self-executing and gives the agency no role in

deciding its scope. 49 U.S.C. § 32919. NHTSA's conclusion "that it lack[s]

authority to dictate the scope of EPCA preemption," 86 Fed. Reg. 74,236, 74,238

(Dec. 29, 2021), was not challenged when issued in 2021 and was not reopened in

the Rule. 89 Fed. Reg. at 52,826 ("NHTSA is not a court and thus does not have

authority to make [EPCA preemption] determinations with the force of law").

NHTSA also has no authority to make preemption determinations related to the

Clean Air Act's Renewable Fuel Standard, which it does not administer. *Id.* at

52,943. Any views NHTSA might have expressed on preemption would thus have

no authoritative effect on any State or automaker.

Petitioners fail to explain what value the agency's non-binding views would

have provided even within its own rulemaking. Without any authority to preempt

state laws, NHTSA's views on preemption are irrelevant to the question it was

answering—namely, the number of electric vehicles automakers would produce in

a "no action" scenario. 89 Fed. Reg. at 52,943. Petitioners never argue, much less

offer evidence, that NHTSA's advisory opinion would have persuaded any

manufacturer to produce fewer electric vehicles than what NHTSA included in its

baseline. And, as Petitioners concede, the two courts that have considered whether EPCA preempts state emission standards *rejected those claims*. Pet. Br. 50. (No court has ever found that the Renewable Fuel Standard preempts state emission standards, either.) Petitioners believe that the *Green Mountain* and *Central Valley Chrysler-Jeep* decisions were wrong, *id.*, but they cite no authority for the notion that NHTSA must, independent of and in conflict with the decisions of those courts, pronounce on preemption before assuming regulated parties will continue to comply with state emission standards. It was eminently reasonable and proper of NHTSA to decline to undertake that exercise.

## III. NHTSA'S MODELING OF ELECTRIC VEHICLE PRODUCTION IN THE BASELINE WAS NOT ARBITRARY AND CAPRICIOUS

The state ZEV standards that NHTSA referenced in its modeling—the Advanced Clean Cars I (ACC I), Advanced Clean Trucks (ACT), and Advanced Clean Cars II (ACC II) regulations—could plausibly matter to this case only if they made that modeling unreasonable. For example, if NHTSA's method overestimated electric vehicle sales in a "no action" scenario, the resulting baseline could produce too-stringent final standards. Petitioners never seriously argue that NHTSA *over*estimated electric vehicle sales in its baseline, however.

That leaves no room for Petitioners to establish the causal link necessary for this Court's review, i.e., that NHTSA's assumptions about state ZEV standards produced an inaccurate baseline that tainted the final standards. To the extent

Petitioners' arguments about state ZEV standards' "feasibility," Pet. Br. 55-58,

gesture at such a showing, substantial evidence in the record points strongly in the

other direction. The record shows that NHTSA reviewed existing data, held

meetings with automakers, and reasonably concluded that manufacturers have and

will continue to meet the increasing annual sales targets set out in ACC I, ACT,

and ACC II for new ZEVs in California and Section 177 States.

### 1. NHTSA Reasonably Assumed that Automakers Would Continue to Comply with ACC I and ACT

NHTSA rightly assumed manufacturers would comply with ACC I and the

relevant parts of ACT—and modeled electric vehicle production accordingly.

First, both regulations were enforceable in States that had adopted them at the

time NHTSA promulgated its rule. 89 Fed. Reg. at 52,610.[15] Petitioners cite no

authority for their implicit—and remarkable—proposition that it is arbitrary and

capricious for a federal agency to assume that regulated parties will comply with

applicable state laws.

Second, there is substantial evidence that automakers had already produced

electric vehicles in numbers to meet, and indeed exceed, the state standards and

---

[15] NHTSA acknowledged that there were pending legal challenges to those rules and to a few states' adoption of them. 89 Fed. Reg. at 52,611. At the time of the final Rule, however, no court had ruled on those preemption arguments, much less invalidated any of the standards. To the contrary, the only two courts to have addressed similar questions had upheld the state emission standards. *See supra* 9-10, 15.

would continue to do so. 89 Fed. Reg. at 52,611. "[M]anufacturers are not just meeting those standards, they are exceeding them." *Id.* at 52,705; *see also id.* at 52,611 n.262; JA__[State Comments, App. A 39].[16] Petitioners point to no contrary evidence and, indeed, do not question NHTSA's findings.

### 2. NHTSA Reasonably Included Modeled Compliance with ACC II

With respect to ACC II, NHTSA used its targets for new ZEV sales as a "proxy" for automakers' anticipated electric vehicle deployment in model year 2026 and beyond. 89 Fed. Reg. at 52,610-11. There is substantial record evidence to support NHTSA's reasonable assumption that future electric vehicle sales will be consistent with ACC II's ZEV targets. NHTSA observed that automakers have historically over-complied with California's ZEV standards. 89 Fed. Reg. at 52,611, 52,705. In addition, automakers have indicated, both in conversations with NHTSA and in public announcements, that they will deploy electric vehicles consistent with ACC II targets and their own electrification goals. *Id.* Every light-duty vehicle manufacturer has made public commitments to electrify their product line, with numerous manufacturers making announcements specific to producing

---

[16] *See also* California Air Resources Board, ACT Credit Summary Through the 2023 Model Year, https://ww2.arb.ca.gov/resources/fact-sheets/ACT-Credits-Summary%202023 (manufacturers have generated enough credits to meet their first-year obligations under ACT; obligations start with the 2024 model year).

all-electric vehicles through 2030 and beyond "regardless" of whether ACC II "becomes a binding legal obligation." *Id.* at 52,705-06.

Notwithstanding the fact that the foregoing record evidence could have supported even higher estimates of electric-vehicle sales, NHTSA took a conservative approach by deliberately *underestimating* automakers' electrification plans. *Id.* at 52,706, 52,709. In addition, as State amici noted in public comments, the use of state ZEV laws to model future ZEV sales in the baseline fails to capture the hundreds of thousands of ZEV sales already occurring outside the States that have adopted such laws, such as the 367,000 new electric vehicles registered in Texas and Florida in 2022. *Id.* at 52,709; JA__[State Comments, App. A 40].

Notably, Petitioners never indicate how many electric vehicles they believe should be in a realistic baseline that does not use state ZEV standards as a proxy— their only acceptable baseline must contain *no* electric vehicles. Pet. Br. 36, 43. Courts have upheld proxies that were "imperfect" or had "faults," so long as the agency finds it "superior to the various alternatives" proposed during the comment period. *WorldCom, Inc. v. Fed. Commc'ns Comm'n*, 238 F.3d 449, 459 (D.C. Cir. 2001); *see also Am. Pub. Gas Ass'n v. Dep't of Energy*, 22 F.4th 1018, 1030 (D.C. Cir. 2022) (rejecting challenge to agency's modeling as "conclusory" where petitioners offered no "evidence of the degree to which any inaccuracy might affect … calculations and conclusions"). Petitioners' choice to offer *no* alternative

methodology for modeling electric vehicles in the no-action baseline comes at a cost: if their primary argument about Section 329029(h) fails, they have left their backup arbitrary-and-capricious argument with no evidentiary support.

### 3. Petitioners' Contrary Arguments Are Without Merit

Petitioners' only response to NHTSA's reasonable baseline approach is to say that automakers purportedly "told NHTSA that their ability to meet state mandates is far from a foregone conclusion." Pet. Br. 55. But the automaker comments on which Petitioners rely do not support that assertion. First, those comments addressed only ACC II and cannot support Petitioners' challenge to NHTSA's modeling of ACC I and ACT. [JA__Auto Alliance App. A 10]. Second, the automakers stated they "will almost certainly plan to comply" with ACC II in California and the Section 177 States that adopt it, and it was hardly unreasonable for NHTSA to take automakers at their word. *Id.* Third, NHTSA did not actually assume manufacturers would comply with ACC II in the dozen States that had (as of the Rule) adopted it. Rather, it assumed that the number of electric vehicles that automakers would sell *nationally* would be consistent with ACC II compliance in those dozen States and assumed *no* electric vehicle sales in other States. 89 Fed. Reg. at 52,709. Thus, even if Petitioners' imagined automaker shortfalls were to occur in some (or even all) ACC-II-adopting States, those shortfalls would also have to exceed the total electric vehicle sales in all non-ACC-II-adopting States

before NHTSA's baseline became an overestimate. Nothing in the record comes close to suggesting such a scenario is plausible.

Although Petitioners assert it was improper to "incorporate[] state electric-vehicle mandates into its baseline," Pet. Br. 3, they provide no actual evidence that, in a "no action" scenario, automakers would sell fewer electric vehicles than NHTSA's model predicted. But that is the only possible contention that could make state ZEV standards relevant to the final stringency of NHTSA's standards. Thus, Petitioners' lack of evidence both disposes of their arbitrary-and-capricious argument and confirms their preemption arguments are irrelevant to this rule review.

## IV. NHTSA DETERMINED IT WOULD HAVE FINALIZED THE SAME FEDERAL STANDARDS EVEN WITHOUT MODELING STATE ZEV STANDARDS IN THE BASELINE

Petitioners' challenge to state ZEV standards also fails because they cannot show they are "substantially prejudiced" by NHTSA's consideration of the state standards, and any alleged error was thus harmless. NHTSA Br. 47-51; *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). NHTSA explained that, even without incorporating the state ZEV standards into the baseline, it would have reached the same determination about the maximum feasible fuel-economy level that automakers can achieve. NHTSA Br. 49-50.

In the process of developing its fuel-economy standards, NHTSA separately created a "No ZEV Alternative" baseline to ensure its analysis would be "robust to other possible futures." 89 Fed. Reg. at 52,552; *see also* JA__[FRIA.3-11, 9-69]. The No ZEV Alternative baseline removes automakers' compliance with ACC I and ACT and additional electric vehicle deployment based on ACC II targets. JA__[FRIA.8-68]; *see also* 89 Fed. Reg. at 52,545 n.6; JA__[TSD.2-43]. Instead, NHTSA included only electric vehicle models that were observed in the model year 2022 fleet. 89 Fed. Reg. at 52,737.

When NHTSA analyzed the No ZEV Alternative baseline, it still found the final fuel-economy standards to be the "maximum feasible fuel economy level that manufacturers can achieve even under the No ZEV alternative baseline." 89 Fed. Reg. at 52,896; *see also id.* at 52,552. NHTSA went on to analyze each of the statutory factors in Section 32902(f) underlying its determination that the finalized standards were the maximum feasible. *Id.* at 52,779. In every instance, NHTSA found that using the No ZEV Alternative baseline instead of the reference baseline would not change its conclusions. *Id.* at 52,799, 52,810, 52,826, 52,832; *see also id.* at 52,835, 52,836.

Thus, even if NHTSA were prohibited from considering state ZEV standards in the baseline, it would have adopted the same final standards. That Petitioners' preemption arguments against state ZEV standards cannot clear the APA's

harmless-error bar further confirms that those arguments are not properly part of this Court's review of the Rule.

## CONCLUSION

The Court should decline to reach Petitioners' preemption arguments against state ZEV standards.

Dated: January 24, 2025          Respectfully submitted,

ROB BONTA
Attorney General
TRACY L. WINSOR
Senior Assistant Attorney General
DENNIS L. BECK, JR.
Acting Senior Assistant Attorney
General
MYUNG J. PARK
Supervising Deputy Attorney
General
KAVITA M. LESSER
Acting Supervising Deputy Attorney
General
DAVID ZAFT
ELIZABETH JONES
Deputy Attorneys General


*/s/ Theodore A. McCombs*

THEODORE A. MCCOMBS
Deputy Attorney General
(619) 738-9003
theodore.mccombs@doj.ca.gov

*Attorneys for the State of California*

FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General

/s/ Carrie Noteboom
CARRIE NOTEBOOM
Assistant Deputy Attorney General
DAVID A. BECKSTROM
Senior Assistant Attorney General
Natural Resources and Environment
Section
Ralph C. Carr Colorado Judicial
Center
1300 Broadway, 7th Floor
Denver, CO 80203
(720) 508-6285
carrie.noteboom@coag.gov

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
ATTORNEY GENERAL

/s/ Lyle T. Leonard
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
(808) 587-3050
lyle.t.leonard@hawaii.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

/s/ Jason E. James
MATTHEW J. DUNN
Chief, Environmental
Enforcement/Asbestos Litigation
Division
JASON E. JAMES
Assistant Attorney General
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(217) 843-0322
jason.james@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
ATTORNEY GENERAL

/s/ Emma Akrawi
EMMA AKRAWI
Assistant Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Emma.Akrawi@maine.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
ATTORNEY GENERAL

/s/ Steven J. Goldstein
Steven J. Goldstein
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

TURNER H. SMITH
Assistant Attorney General,
Deputy Chief, Energy and
Environment Bureau

/s/ Seth Schofield
SETH SCHOFIELD
Senior Appellate Counsel
MATTHEW IRELAND
Assistant Attorney General
Office of the Attorney General
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
seth.schofield@mass.gov

FOR THE STATE OF
MINNESOTA

KEITH ELLISON
ATTORNEY GENERAL

/s/ Peter Surdo
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2127
(651) 757-1061
peter.surdo@ag.state.mn.us

FOR THE STATE OF NEW
JERSEY

MATTHEW J. PLATKIN
ATTORNEY GENERAL

/s/ Nell Hryshko
NELL HRYSHKO
Deputy Attorney General
Division of Law
25 Market St., P.O. Box 093
Trenton, NJ 08625
(609) 376-2735
nell.hryshko@law.njoag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
ATTORNEY GENERAL

JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
YUEH-RU CHU
Chief, Affirmative Litigation Section
Environmental Protection Bureau

*/s/ Gavin G. McCabe*

GAVIN G. McCABE
ASHLEY M. GREGOR
Assistant Attorneys General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8469
gavin.mccabe@ag.ny.gov

FOR THE STATE OF OREGON

DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*

PAUL GARRAHAN
Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.state.or.us

FOR THE STATE OF RHODE
ISLAND

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Nicholas M. Vaz*

Nicholas M. Vaz
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
 nvaz@riag.ri.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Hannah Yindra*

HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

FOR THE STATE OF
WASHINGTON

NICHOLAS w. BROWN
ATTORNEY GENERAL

*/s/ Alexandria Doolittle*
ALEXANDRIA K. DOOLITTLE
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6769
Alex.Doolittle@atg.wa.gov

FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street N.W., Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the type-volume requirements of the Court's October 29, 2024 briefing order because it contains 6,296 words, not counting the parts excluded by Rule 32(f) and Circuit Rule 32(b)(1).

Dated: January 24, 2025

/s/ Theodore McCombs
THEODORE MCCOMBS
*Attorney for the State of California*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025, I electronically filed the foregoing

**AMICUS CURIAE BRIEF IN SUPPORT OF RESPONDENTS** with the Clerk

of the Court for the United States Court of Appeals for the Sixth Circuit using the

Court's CM/ECF system.

I further certify that all parties are participating in the Court's CM/ECF

system and will be served electronically by that system.


Dated:    January 24, 2025

                                        */s/ Theodore McCombs*
                                        THEODORE MCCOMBS